1 Josh A. Cohen (SBN 217853)
RoseMarie Maliekel (SBN 276036)
2 CLARENCE DYER & COHEN LLP
899 Ellis Street
3 San Francisco, CA 94109
Tel: (415) 749-1800
4 Fax: (415) 749-1694
jcohen@clarencedyer.com
5 rmaliekel@clarencedyer.com

6 Attorneys for Defendant
UBER TECHNOLOGIES, INC.
7

8 UNITED STATES DISTRICT COURT

9 NORTHERN DISTRICT OF CALIFORNIA

10 SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE 1 and JANE DOE 2,  Plaintiffs,  v.  UBER TECHNOLOGIES, INC.,  Defendant. | Case No. 15-cv-04670 SI  **DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** |

## I. INTRODUCTION

The case cited by the Court at oral argument on Uber's motion to dismiss – *Berger v. Southern Pacific Company*, 144 Cal. App. 2d 1 (1956) – is at odds with Supreme Court authority, ignores comparable cases decided before it, and violates modern tort principles. It also creates an unjustifiable disconnect between the standard of care required of common carriers and the standard required of other entities that have special relationships with the public.

Contrary to *Berger*, a common carrier in California is not strictly liable for the torts of its employees that fall outside the scope of employment. Accordingly, even if Plaintiffs' alleged assailants were Uber employees (which they were not), and even if Uber were a common carrier (which it is not), Plaintiffs' *respondeat superior* claims should be dismissed as a matter of law.

## II. ARGUMENT

In *Berger*, a sleeping-car porter sexually assaulted a railway passenger while she slept. Finding that a sleeping-car company owes the same duty to its passengers as a common carrier, the court quoted American Jurisprudence for the proposition that a common carrier's liability "extends not only to cases where the assault was in the line of the employee's duty, but also to those instances where the act was merely that of an individual and entirely disconnected with the performance of the agent's duties." *Id.* at 6-7. This rule, said the court, is "based upon [a carrier's] broad duty as a common carrier to protect its passengers from assault." *Id.* at 7. Under the rule, the court continued, a common carrier is held "to practically the liability of an insurer" with respect to the tortious acts of employees. *Id.* Accordingly, the court found no error in the trial court's instruction that the company was liable whether or not the porter acted within the scope of his employment. *Id.* at 8.

As this Court correctly noted at the hearing on Uber's motion, *Berger* has not been often followed by California courts. The reasons for this are several.

### A. A Common Carrier Is Not Strictly Liable For The Torts Of Its Employees

In the seminal case on common-carrier liability in the state of California, the California Supreme Court acknowledged a common carrier's heightened duty of care, but made clear that

common carriers are not strictly liable for injuries to their passengers:

> We reiterate, however, that carriers are not insurers of their passengers' safety and will not automatically be liable, regardless of the circumstances, for any injury suffered by a passenger. . . . Rather, a carrier is liable for injuries resulting from an assault . . . only where, in the exercise of the required degree of care, the carrier has or should have knowledge from which it may reasonably be apprehended that an assault on a passenger may occur, and has the ability in the exercise of that degree of care to prevent the injury.

*Lopez v. Southern Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 791 (1985). This rule has been repeated by the Supreme Court, *see Gomez v. Superior Ct.*, 35 Cal. 4th 1125, 1130 (2005) (roller coaster operator), and followed by numerous courts of appeal. *See*, *e.g.*, *City and Cty. of S.F. v. Superior Ct.*, 31 Cal. App. 4th 45, 49 (1994) (common carrier can be liable for assault only when the carrier "knows or should know that an assault is about to occur"); *Squaw Valley Ski Corp. v. Superior Ct.*, 2 Cal. App. 4th 1499, 1507 (1992) ("[T]he degree of care and diligence which [common carriers] must exercise is only such as can reasonably be exercised consistent with the character and mode of conveyance adopted and the practical operation of business of the carrier.") (quoting *Lopez*, 40 Cal. 3d at 785).

Given that common-carrier status does not trigger strict liability in this state, no contemporary California state court has endorsed *Berger*'s rule that an employee's conduct is deemed as a matter of law "to have been the conduct of the corporation." *Berger*, 144 Cal. App. 2d at 9.[1]

**B.     A Carrier Is Not Liable For Employees' Acts Outside the Scope of Employment**

*Berger* was not the first California case involving an intentional tort by a common carrier's employee. Rather than cite to existing California precedents, however, *Berger* relied exclusively on treatises that drew on cases from disparate states. The result is a decision that cannot be reconciled with the pertinent authorities that preceded it.

---

[1] Applying maritime law to an admiralty action arising from an assault on a cruise ship, one Ninth Circuit case has applied a comparable rule. *Morton v. De Oliveira*, 984 F.2d 289 (9th Cir. 1993).

In *Slater v. Friedman*, 62 Cal. App. 668 (1923), for example, the Court of Appeal considered it irrelevant whether a taxi was a common carrier where the driver acted outside the scope of his employment:

> The fact as to whether or not defendant operated his taxi as a common carrier, or that he operated the machine for hire, are questions that are unimportant, if the finding of the ultimate fact that the driver was acting beyond the scope of his employment is warranted by the evidence, and as we are of the opinion that the trial court was correct in its conclusion upon this subject, failure to find upon these questions cannot constitute error requiring a reversal, as the only effect thereof would be to establish the degree of care required of defendant.

*Id.* at 670.

Similarly, in *Little v. Los Angeles Railway Corporation*, 94 Cal. App. 303 (1928), the Court of Appeals confirmed that:

> the defendant can only be held liable for the damage done to the plaintiff upon the doctrine of respondeat superior, and therefore any act of the conductor, although done while he is actively engaged in discharging his duties as such, but which does not fall within the scope of such duties, cannot bind the defendant, if physical injury or other damage to a passenger or other person or his property be directly caused thereby.

*Id.* at 311. And in several other cases involving common carriers, courts considered whether employees' acts fell within the scope of employment without suggesting at any time that common-carrier status rendered that inquiry irrelevant. *See*, *e.g.*, *Turner v. North Beach and Mission Railroad Company*, 24 Cal. 594, 599 (1868); *Cromwell v. Los Angeles Ry. Corp.*, 102 Cal. App. 499, 501-03 (1929); *Galloway v. United Railroads*, 69 Cal. App. 770, 776 (1924) (holding that trial court erred when it "withdrew from the jury the issue, which was highly essential to plaintiff's cause, that the motorman was acting within the scope of employment when he struck the fatal blow"); *Waniorek v. United Railroads*, 17 Cal. App. 121, 131 (1911) (confirming that "[c]ommon carriers of passengers are responsible for the negligent or willful acts of their employees, *done within the scope of employment*, whether directly authorized or not") (emphasis added).

The rule announced in *Berger* is undermined by the court's failure to acknowledge, let alone distinguish, these many contrary authorities.

### C. The *Berger* Rule Has Been Repudiated As Inconsistent With Modern Tort Principles

Although no California court has expressly repudiated the rule articulated in *Berger*, the highest court in New York has done exactly that. In *Adams v. New York Transit Authority*, 88 N.Y.2d 116 (1996), the New York Court of Appeals considered claims filed by a subway passenger who was attacked by an employee of the transit authority. The Court acknowledged prior case law in New York holding that a common carrier was liable to passengers for the torts of its employees whether or not those torts were committed within the scope of their employment. *Id.* at 117 (citing *Stewart v. Brooklyn & Crosstown R.R. Co.*, 90 N.Y. 588). The Court found, however, that such a standard was "no longer viable as a matter of law or policy," and held that the transit authority could not be vicariously liable for assaultive conduct outside the scope of employment. *Id.*

As the *Adams* court explained at length, modern tort principles – and especially the rationale animating *respondeat superior* liability – do not support a special rule of absolute liability for common carriers:

> Where an unprovoked assault or other intentional tort committed by a carrier's employees is determined to be outside the scope of the actor's employment, it is, by definition, not of the kind of activity that is "as a practical matter . . . sure to occur in the conduct of the [carrier's] enterprise." Thus, it makes no more sense to treat the cost of such misconduct as "a required cost" of the carrier's business than it would to treat the same class of misconduct as a required cost of the business of a restaurateur, a storekeeper or any other class of proprietor.

*Id.* at 120 (quoting Prosser and Keeton, Torts § 69, at 500 [5th ed. 1984]).

The Court further noted that "the apparent historic underpinnings of the carrier's absolute liability for employee misconduct are of dubious validity under current social and legal conditions." *Id.* To the extent those underpinnings involved the "special hazards" of rail travel, "that rationale has long since become outdated." *Id.* In any event, "the risks arising from the independent non-work-related tortious actions of an employee are unrelated to the hazards of travel and, in fact, are essentially the same regardless of whether the individual is hurtling through a subway tunnel or is instead leisurely sipping a cup of coffee in a quiet restaurant." *Id.*

The Court also rejected any special rule for common carriers premised on passengers' supposed status as "helpless prisoners confined within the carriers' travel compartments." *Id.* As the Court noted, "modern life includes a host of other situations in which a consumer of services, such as a hospital patient or movie theater patron, might be confined to a limited area or find his or her movements similarly curtailed," yet "[i]t is doubtful that a court today would hold the proprietor of these classes of enterprises absolutely liable for an employee's intentional torts solely because of the existence of those conditions." *Id.* at 122.

The reasons supplied by *Adams* for rejecting the *Berger* rule apply with equal force in California. For all of those reasons, the Court should not follow the *Berger* rule.

### D. California Courts Find No Vicarious Liability For Acts Outside The Scope of Employment In Cases Involving Other Special Relationships

As *Berger* and *Adams* make clear, the rationale for holding a carrier strictly liable for the acts of employees purports to rest on the special relationship between a carrier and its passengers. *See Berger*, 144 Cal. App. 2d at 7 (rule is based upon carrier's "broad duty as a common carrier to protect its passengers from assault"); *Adams*, 88 N.Y.2d at 121 (rule is based on "special hazards" of rail travel); *see also* 14 Am. Jur. 2d Carriers § 814 (rule is based on "the carriers' assumption of the responsibility for the safety of others, as well as the fact that the passenger does not have all of his or her normal rights of self-protection when traveling with a carrier").

Common carriers, however, are not the only entities that have a special relationship with members of the general public, or that owe the public an elevated duty of care. School districts owe a special duty to their students, hospitals owe a special duty to their patients, and troop leaders owe a special duty to boy scouts. In all of these contexts, however, California courts hold that employers cannot be held vicariously liable for intentional torts committed by employees outside the scope of employment. *See Alma W. v. Oakland Unified Sch. Dist.*, 123 Cal. App. 3d 133 (1981) (school district not vicariously liable for custodian's sexual assault of student on school grounds because outside the scope of employment); *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291 (1995) (hospital not vicariously liable for ultrasound technician's sexual assault of patient because outside the scope of employment); *Juarez v. Boy Scouts of Am., Inc.*, 81

5    Case No. 15-cv-04670 SI
DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS

Cal. App. 4th 377, 394 (2000) (Boy Scouts not vicariously liable for scoutmaster's sexual molestation of scout because outside the scope of employment).

It would be incongruous to hold common carriers to a higher standard than other entities that have similarly special relationships with the public. The Court should follow well-established California law holding that even in the context of special relationships, an employer cannot be vicariously liable for sexual assault committed outside the scope of employment.

### E. The Common Carrier's Duty Ends When The Trip Is Over

Even if the Court assumed that a common carrier's duty to passengers renders the carrier strictly liable for an employee's torts – which, for the reasons stated above, it does not – that duty terminates once carriage is complete. *See* Am. Jur. 2d Carriers § 814 ("The carrier's duty as to the safety of its passengers terminates when the carrier-passenger relationship terminates."); *Marshall v. United Airlines*, 35 Cal. App. 3d 84, 86 (1973) (heightened degree of care is owed only while "passengers are *in transitu*, and until they have safely departed from the carrier's vehicle"). Accordingly, a common-carrier allegation cannot possibly expand a defendant's potential vicarious liability for acts committed by an employee after a ride has clearly ended.

This rule is fatal to the *respondeat superior* claims asserted by Jane Doe 2. The Amended Complaint alleges that Jane Doe 2's friend used the Uber App in connection with her ride to the Windjammer Bar, but it does not allege that she or anyone else used the Uber App in connection with her transportation from the bar to her friend's house, or from her friend's house to the site of the alleged assault. Accordingly, as pled, any special common-carrier duty Uber purportedly owed to Jane Doe 2 terminated hours before the alleged assault. It follows that Uber cannot be strictly liable for Jane Doe 2's alleged assault even under the *Berger* rule.

### F. As Pled, Uber Is Not A Common Carrier

No matter what standard of care is required of a common carrier, Plaintiffs in this action have failed to plead facts sufficient to trigger that standard. Far from alleging that Uber carries anything, the Amended Complaint alleges that Uber's sole function is to connect riders with the drivers who will carry them.

6  Case No. 15-cv-04670 SI
DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS

According to the Complaint, Uber makes itself "available to the general public through Apps downloadable to smartphones." (Compl., ¶ 24.) Uber allows drivers who apply and meet certain criteria to access to the very same App. (*Id.*, ¶ 25.) Uber then "makes the drivers available to the public to provide transportation services through its App." (*Id.*.)

As pled, therefore, it is the *drivers* who provide transportation services, not Uber. Uber simply "makes the drivers available to the public . . . through its App." (*Id.*) While Uber "connects drivers and riders" (*id.*, ¶ 23), it is not alleged to be a "carrier of persons" itself. Cal. Civ. Code § 2100.

Uber's terms of service, which are before the Court and can be considered on a motion to dismiss, are perfectly consistent with these allegations in the Complaint:

> The Company does not provide transportation services, ***and the company is not a transportation carrier***. It is up to the third party transportation provider, driver or vehicle operator to offer transportation services which may be scheduled through use of the application or service.

(Cohen Decl., Ex. 3, p. 1) (emphasis added).

Having failed to allege that Uber is a common carrier, Plaintiffs cannot state a claim under the standard of care applicable to common carriers.

## III. CONCLUSION

In California in 2016, a common carrier is not strictly liable for torts committed by employees outside the scope of employment. Accordingly, it is fatal to Plaintiffs' vicarious-liability claims that their alleged assaults were "undertaken solely for the [drivers'] personal gratification and had no purpose connected to the employment." *Farmers Ins. Group v. County of Santa Clara*, 11 Cal. 4th 992, 1005 (1995). For this reason, and the reasons stated in Uber's moving papers and at oral argument, the Amended Complaint should be dismissed.

DATED: April 8, 2016    Respectfully submitted,

By  __/s/_____
    Josh A. Cohen
    RoseMarie Maliekel
    Attorneys for UBER TECHNOLOGIES, INC.